IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID HOFFMAN and TAMMY HOFFMAN, ) | | |
| Plaintiffs, ) | | |
| v. ) | No. | 06 C 6783 |
| ) | | |
| GOTCHER & BELOTE and JEFF BELOTE, ) | Judge Lefkow | |
| Defendants. ) | | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FOR DISGORGEMENT OF FEES

Defendants, GOTCHER & BELOTE and JEFF BELOTE (collectively "Belote"), by attorneys Daniel F. Konicek and James Lynch, submit the following response to plaintiffs' motion for summary judgment for disgorgement of fees:

### INTRODUCTION

Plaintiffs' motion for summary judgment must be denied for several reasons. First, it is a transparent but unsuccessful attempt to circumvent a ruling by Judge Lefkow that Belote *did not* engage in the unauthorized practice of law in representing the Hoffmans. Second, plaintiffs waited until five months after the close of discovery to seek disgorgement. (See plaintiffs' February 10, 2009 letter, attached as Exhibit "A"). Third, plaintiffs have presented no evidence that they are entitled to disgorgement of fees. Fourth, Judge Lefkow's ruling of June 4, 2009, determined that Belote did not engaged in the unauthorized practice of law, making disgorgement of fees an inappropriate and unrecoverable element of damages for the plaintiffs' claim. Finally, plaintiffs' "legal expert," Charles Hornewer, never testified as to the issue of disgorgement, nor did he address it in his Rule 26(a)(2) disclosure. Accordingly, plaintiffs attempt to seek disgorgement of fees should be rejected and their motion denied.

## ARGUMENT

On a motion for summary judgment, the district court must construe all facts and draw all reasonable inferences in favor of the non-movant. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). Summary judgment is appropriate where the record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Phipps v. Sheriff of Cook County*, --- F.Supp.2d ----, 2009 WL 4146391, p. 1, (N.D. Ill. 2009); citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> I. **Jeff Belote did not engage in the unauthorized practice of law as confirmed by Judge Lefkow's order of June 4, 2009, which was based in part on the Illinois Appellate Court's decision in *Colmar v. Fremantlemedia N.A.***

Following a pre-trial conference on April 16, 2009, Judge Joan Humphrey Lefkow allowed the parties to fully brief the issue of whether defendant Jeff Belote engaged in the unauthorized practice of law in representing the plaintiffs in contract (settlement) negotiations. (Defendants' motion, Documents #115-119 on Hoffman Docket; Plaintiffs' motion, Document #126 on Hoffman Docket.) Simply put, the majority of plaintiffs' motion for summary judgment here, for "disgorgement of fees", is a word for word recitation of a brief they filed on May 20, 2009. Judge Lefkow reviewed the briefs on the issue of whether Jeff Belote engaged in the unauthorized practice of law, then issued an order and attached statement. Judge Lefkow granted defendants' motion in limine (styled as a "supplemental trial brief") to bar evidence or argument that defendant Belote engaged in the unauthorized practice of law. (See Order and Statement of June 4, 2009, attached here as Exhibit "B".)

2

It is important to note that while the decision on June 4, 2009 was made primarily to determine what evidence could be presented to a jury during trial, it is nonetheless a decision previously rendered by this District Court in favor of defendants, determining that there can be no evidence or claim that Belote engaged in the unauthorized practice of law. Further, Judge Lefkow stated:

> This case concerns attorney malpractice and the central issue is whether or not defendants breached the standard of care arising from the attorney client relationship. Whether or not Belote's representation of the Hoffmans and settlement of their Illinois personal injury claims constituted the unauthorized practice of law **has limited, if any, relevance to determining whether defendants breached the relevant standard of care**, [1] but allowing plaintiffs to present evidence and argument on this issue would create a substantial danger of unfair prejudice or jury confusion. *See* Fed. R. Evid. 403.
> [Emphasis Added.] (June 4, 2009 Order, Exhibit "A").

Defendants repeat the language used by Judge Lefkow here because plaintiffs are trying to re-insert the issue of unauthorized practice of law, contrary to the clear import of Judge Lefkow's ruling. To permit plaintiffs to succeed on this improper course would be to permit them to cause confusion and unfair prejudice by focusing on irrelevant allegations of "solicitation" and lending of money. At issue in this lawsuit is whether defendant Jeff Belote breached the standard of care, and defendants urge the court to keep the case and the plaintiffs focused on the actual issues the jury will be asked to decide.

    II.    **Jeff Belote did not "solicit" business from Lamar Hoffman. Plaintiff David Hoffman made the decision to have Belote represent him after interviewing Illinois attorneys. This did not constitute the unauthorized practice of law.**

Once again, plaintiffs are asking this Court to re-visit a ruling made by Judge Lefkow. On April 16, 2009, Judge Lefkow granted Belote's motion in limine to exclude all evidence

---

[1] "Indeed, plaintiffs' own legal expert, Charles Hornewer, testified at his deposition that he does not believe the Rules of Professional Conduct of either Illinois or Oklahoma even prohibited Belote from representing the Hoffmans and settling their case." (Exhibit "A").

relating to the $4,500 allegedly paid to Mr. Hoffman's father. This ruling applies to all related evidence, including that relating to so-called "solicitation." Moreover, there is no expert testimony that Belote violated Rule 7.3 of the Illinois Rules of Professional Conduct (and no evidence that the Illinois Rules of Professional Conduct applied to Belote's representation). This is another attempt by plaintiffs to use the summary judgment procedure to create the impression that there is a triable issue relating to alleged violations of rules of conduct that do not and did not govern Belote's representation of the plaintiffs.

"To prevail on a legal malpractice claim, the plaintiff client must plead and prove that the defendant attorneys owed the client a duty of due care arising from the attorney-client relationship, that the defendants breached that duty, and that as a proximate result, the client suffered injury." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill.2d 218, 856 N.E.2d 389, 394 (2006). Because they are incapable of proving their claim for legal malpractice with evidence of a breach of the standard of care, plaintiffs' are attempting to present evidence that Belote "solicited" David Hoffman's personal injury claim to fool the jury into concluding that Belote breached the standard of care.

Hoffman admitted that he hired Belote to pursue personal injury claims against Gilbert and Schneider National. (Rule 56.1(a) Stmnt ¶ 5.) David Hoffman's father, Lamar Hoffman, recommended Belote to the Hoffmans for their claims against Gilbert and Schneider National. (Rule 56.1(a) Stmnt ¶ 9.) Prior to hiring Belote, the Hoffmans spoke to other attorneys in Illinois and the Chicagoland area, but they were not satisfied with the information they received from them. On May 20, 2003, the Hoffmans hired Belote on a contingent fee basis. (Rule 56.1(a) Stmnt ¶ 10.) The Hoffmans hired Belote because they felt "comfortable with him and believed

4

he would represent them well." (Rule 56.1(a) Stmnt ¶ 11.) The material facts above, taken from the original Complaint and the deposition of David Hoffman, demonstrate that summary judgment cannot be granted based on any alleged "solicitation" by Belote.

Additionally, any argument that Belote paid $4,500 dollars to Lamar Hoffman as a "referral" or "solicitation" fee has absolutely no support in the record for purposes of summary judgment under FRCP 56. Plaintiffs cite defendants' answers to interrogatories as support for their assertion that this was a "referral" fee. (Plaintiffs' Rule 56.1(a) Stmt ¶ 15.) Defendants' answers state plainly that Lamar Hoffman was a neighbor of defendant Belote's at the time of the underlying accident in 2003. Lamar Hoffman recommended to his son that he call Jeff Belote regarding his injury, as noted in defendant's Rule 56.1(a) undisputed material facts. (Rule 56.1(a) Stmnt ¶ 9.) In times of trouble, Lamar Hoffman would often ask his friend and neighbor for financial help, and he received that help from Jeff Belote. Plaintiffs contend that this payment of $4,500 dollars was made to Lamar Hoffman as a "referral" fee. In reality, the payment was entirely separate and distinct from the underlying matter and occurred after David Hoffman had accepted the settlement.

Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. Lamar Hoffman's financial need does not have any tendency to make the existence of facts regarding the alleged legal malpractice more or less probable pursuant to Fed. R. Evid. 403. It was this type of information Judge Lefkow addressed in her order of June 4, 2009, as it has limited relevance, if any, to determining whether Jeff Belote breached the standard of care. Most important, for purposes of

FRCP 56 and plaintiff's motion of summary judgment, the reasons for this payment are not undisputed, as plaintiff has argued.

In light of this, defendants' motion for summary judgment should be granted because the Hoffmans' informed decision to hire an Oklahoma attorney supports a finding that Belote was not engaged in solicitation. Further, it supports the finding by Judge Lefkow in Exhibit "B" that Belote did not engage in the unauthorized practice of law. This Court has previously examined *Colmar v. Fremantlemedia North America* and its applicability to Belote's actions. 344 Ill.App.3d 977 (1st Dist. 2003). *Colmar* does not give a bright-line rule that can be applied to this case to determine whether Belote engaged in the unauthorized practice of law. During the pre-trial conference and arguments on motions *in limine*, Judge Lefkow cited to proposed ABA Model Rule of Professional Conduct 5.5 and *Colmar* for guidance. Plaintiffs have included both in their motion for summary judgment for disgorgement at pages 5 and 6.

Specifically, Subsection (3) of ABA Model Rule of Professional Conduct 5.5 would be the applicable section to this instant action, as it relates to the alleged conduct of attorney Belote. Plaintiffs do not dispute this in their motion (Plaintiffs' MSJ, p. 5-7). Subsection (3) of Rule 5.5 allows an attorney to provide services in another jurisdiction for the purposes of a mediation if, "the services are *reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice* and are not services for which the forum requires admission pro hac vice." [Emphasis Added.] *Id.* at 987.

There is no dispute that Belote did not need to seek admission *pro hac vice*. The issue for this Court becomes whether Belote's representation was reasonably related to his practice in Oklahoma. Belote is a litigator with extensive personal injury experience. More important,

6

Hoffman made the decision to hire Belote after interviewing other Illinois attorneys. (Ex. B to defendant's MSJ, pgs. 8, 11.) Hoffman hiring Belote is significant because he chose to associate with an attorney who he knew practiced in the area of personal injury. The Hoffmans' case is related to Belote's work as a personal injury lawyer. Thus, Subsection (3) of proposed ABA Model Rule of Professional Conduct Rule 5.5 would permit Belote's representation, and the representation would not constitute the unauthorized practice of law.

Admittedly, Hoffman chose Belote to represent him because he thought he would provide the best representation. (Ex. B to defendant's MSJ, pgs. 8, 10.) Belote never hid the fact he was an Oklahoma attorney. (Rule 56.1(a) Stmt ¶ 12.) He did not represent that he had offices in Illinois. Plaintiffs' mandate that Belote's conduct was solicitation and the unauthorized practice of law go directly against the policy arguments in *Colmar* that encourage pre-litigation resolution. Significantly, the Hoffmans had not yet filed a lawsuit when Belote attended the mediation. Mediator and former Judge O'Connell received a Mediation Statement directly from Belote's office in Oklahoma. The mediation was not cancelled. Neither Judge O'Connell nor the defense attorney for Schneider National, Robert Golden, filed an action with the ARDC against Belote nor contested his legal right to participate in what amounted to contract negotiation unrelated to any pending litigatio. For these reasons, this Court should deny plaintiffs' motion for summary judgment because Jeff Belote never solicited the Hoffmans.

  III. **Belote did not violate Rule 1.8 of the Illinois and Oklahoma Rules of Professional Conduct, nor did have any conflict of interest with the Hoffmans in the underlying litigation.**

Disgorgement of fees pursuant to summary judgment would not be proper despite plaintiffs' argument. Plaintiffs' focus on Rule 1.8 of the Rules of Professional Conduct attempts

7

to sway attention from what is relevant: whether there was a deviation from the standard of care. The standard of care is what a reasonably careful lawyer practicing in the same or similar localities would do. *See* Illinois Pattern Jury Instruction 105.1 (2008). An attorney's negligence and deviation from the standard of care must generally be established through expert testimony. *Barth v. Reagan*, 139 Ill.2d 399, 407 (1990). The relevant question is whether there was a deviation from the standard of care – not whether there was an unauthorized practice of law. *Id*. Plaintiffs' own "legal expert", Charles Hornewer, opined that the neither the Illinois Rules of Professional Conduct ("IRPC") nor Oklahoma rules prohibited Belote from representing the Hoffmans, or from settling their case. Hornewer testified:

> Q: Just so my question is clear, do you believe the Rules of Professional Conduct under either Oklahoma or Illinois prohibited Mr. Belote from representing the Hoffmans and settling their case?
>
> A: No.

(Ex. F to defendants' MSJ, pg. 26, l. 14-19).

Additionally, whether Belote violated a disciplinary rule of Illinois or Oklahoma is not material to an issue of deviation from any standard of care for professional negligence. The Supreme Court has sole authority to punish disciplinary violations and trial courts may not impose sanctions for violations of the IRPC. *In re Mitan*, 119 Ill.2d 229, 246 (1987). In an analogous case, the First District Appellate Court of Illinois held in *Nagy v. Beckley* that an attorney's alleged violation of the Code of Professional Responsibility was not an independent source of tort liability for which plaintiffs could file suit. *Nagy v. Beckley*, 218 Ill.App.3d 875, 881 (1st Dist. 1991). Here the signing of a promissory note by Belote to Testa Auto of Oklahoma, which allowed the Hoffmans to purchase a pickup truck, was not a deviation from the standard

8

of care relating to the ultimate settlement of a personal injury case. There was no prohibited transaction, no conflict, no violation of a conflict rule, and no prejudice to David Hoffman. Any reference to the Rule 1.8 of the IRPC or the Oklahoma Rules of Professional Conduct as being congruent to the standard of care in a professional negligence action is irrelevant, misleading and prejudicial.

      A.      **Belote did not violate Rule 1.8 of the Illinois Rules of Professional Conduct.**

Plaintiffs are intent on building their claim against Belote by pretending that Belote violated a rule of professional conduct. However, the IRPC do not apply to Belote and do not govern his conduct as an attorney. Moreover, the Oklahoma Rules of Professional Conduct do not supply a basis for a claim of legal malpractice. Therefore, any purported violation of Rule 1.8 is not material to any issue of deviation from the standard of care for professional negligence. Plaintiffs offer only one fact—that Belote signed the note— in support of their argument on this subject, instead choosing to rely on the same argument they made in their May 20, 2009 brief, that this was a violation of Rule 1.8. (Document #126 on Hoffman Docket, pgs. 7-10.)

Belote was not subject to and did not have to comply with the IRPC for attorneys. The Illinois Supreme Court has made very clear that the Illinois Rules of Professional Conduct *apply only to attorneys licensed in Illinois*. Therefore, they do not and did not apply to Belote. Plaintiffs' expert Hornewer provided a laundry list of supposed violations of the IRPC by Belote. However, Hornewer failed to identify how or why the rules would govern Belote's practice of law and representation of the plaintiffs. Without evidence or law to support the

contention that Belote was required to comply with the IRPC, it is prejudicial and improper for plaintiffs to suggest, through their attorneys or witnesses, that Belote violated a rule he was not obligated to comply with and that the supposed violation could be basis for judging Belote to be negligent.

In *Ford Motor Credit Co. v. Sperry*, 214 Ill.2d 371, 382-383 (2005), the Illinois Supreme Court considered whether a law firm's failure to register as a professional service corporation under Ill. S. Ct. Rule 721(c) rendered the legal services provided by the law firm to be the unauthorized practice of law in Illinois. In finding that the failure to register did not nullify the firm's actions, or cause the representation to amount to the unauthorized practice of law, the court analyzed the IRPC and its role in lawyer discipline:

> This court has the inherent power to define and regulate the practice of law in this state. [Citations omitted.] More specifically, 'the power to prescribe the rules governing attorney conduct, and to discipline attorneys for violating those rules, rests solely with this court.' [Citations omitted.] To this end, our court has promulgated rules which set forth detailed regulations for the study of law and which govern the admission of applicants to our state bar. [Citations omitted.] This court has also created a comprehensive scheme to regulate attorneys and discipline them for misconduct. As part of this regulatory scheme, *we have promulgated rules of professional conduct for state-licensed attorneys* (See 134 Ill.2d Rs. 1.1 through 8.5), and have constituted an Attorney Registration and Disciplinary Commission (ARDC), and created the office of an Administrator to supervise "[t]he registration of, and disciplinary proceedings affecting, members of the Illinois bar." [Citations omitted.]

The court continued:

"The above-described regulatory rules *which govern the admission of lawyers to our state bar*, regulate the practice of law and the conduct of lawyers, and prescribe discipline for lawyer misconduct are intended to safeguard the public and assure the integrity of our legal system."

*Ford Motor Credit* at 214 Ill.2d 382-383. [All Emphasis Added.]

There is no dispute over the following fact: Belote was not an Illinois attorney. He was, and remains licensed in Oklahoma and not Illinois. Therefore, according to the Illinois Supreme Court, the IRPC do not apply to Belote, an Oklahoma lawyer. He is not an Illinois-licensed attorney, so the rules "which govern the admission of lawyers to (the Illinois) state bar" do not apply to him.

Plaintiffs cannot make the IRPC applicable to Belote by *fiat* or the whim of their expert, Hornewer. Plaintiffs' argument for disgorgement of fees carries no weight, for Belote cannot under any circumstance be held liable for allegedly violating a rule that he was not required to comply with.

      **B.**    **Belote did not violate Rule 1.8 of the Oklahoma Rules of Professional Conduct.**

Plaintiffs get no further support for their flawed effort to build a malpractice claim on supposed violations of the Rules of Professional Conduct from Oklahoma, Belote's home state. Without question, Belote is subject to and must comply with the Oklahoma Rules of Professional Conduct for attorneys. The Oklahoma rules, however, provide no basis for plaintiffs to contrive their case against Belote.

First, and most important, the Oklahoma rules in effect during Belote's representation of the plaintiffs specifically stated that the rules could not supply a basis for a legal malpractice claim. The Oklahoma Rules of Professional Conduct, Chapter 1, App. 3-A, effective July 1, 1988 through December 31, 2007, stated:

**Scope**

\*\*\*\*\*

Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process...Violation of a Rule should not give rise to a cause of action nor should it create presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

(Oklahoma Rules of Professional Conduct, Chapter 1, App. 3-A, effective July 1, 1988 through December 31, 2007.)

By the precise and unambiguous language of the Oklahoma Rules of Professional Conduct, therefore, a supposed violation of a rule cannot supply the basis of a legal malpractice claim against an attorney allegedly in violation of a rule. It is not for plaintiffs or their expert to revise the law and impose on Belote obligations that the Oklahoma bar prohibits.

Oklahoma courts have rejected legal malpractice claims premised on supposed violations of the Oklahoma Rules of Professional Conduct. For example, in *Mahorney v. Warren*, 60 P.3d 38 (Civ. App. Div. 1 2002), the appellate court affirmed dismissal of a legal malpractice claim premised on alleged violations of the Oklahoma Rules of Professional Conduct. The court stated: "We point out that a violation of (professional conduct) rules does not provide a basis for a private action in tort. Rather, the Oklahoma Supreme Court possesses original and exclusive jurisdiction to prosecute any alleged attorney rules violations." *Mahorney*, 60 P.3d at 40.

Finally, plaintiffs' attorney witness, Hornewer, is <u>not</u> licensed in Oklahoma and has no knowledge of or familiarity with the Oklahoma Rules of Professional Conduct. Therefore, even if a supposed violation of those rules could supply a basis of a malpractice claim against Belote, Hornewer is not qualified to testify regarding the matter. Hornewer's Rule 26(a)(2) report fails to list the Oklahoma Rules of Professional Conduct as something he reviewed in reaching his opinions in this case; it would be improper to allow him to do so now, particularly in light of the fact that he is not licensed in Oklahoma and that the Oklahoma rules explicitly prohibit the use of the rules as a basis for a private right of action.

Belote has a property right in remaining free from tort liability for an alleged violation of Rule 1.8 of the Oklahoma Rules of Professional Conduct. By statute, no Oklahoma-licensed attorney can be liable for malpractice based on an alleged violation of a disciplinary rule of conduct. In other words, although an Oklahoma licensed attorney can be subject to discipline for violating a rule of conduct, the same attorney <u>cannot</u> be subject to tort liability for the same violation. Where a right to be free from liability is provided by statute, an individual has a property right in that freedom from liability. *Rudow v. City of New York*, 822 F.2d 324 (2nd Cir. 1987). Such a substantive right is a protectable property interest that cannot be removed by expert opinion.

## <u>CONCLUSION</u>

It is apparent from the existing record in this case that plaintiff's motion for summary judgment, as it pertains to any unauthorized practice of law, should be denied as the issue has already been decided. Further, there is no permissible basis on which the plaintiffs, their attorneys or their witnesses can premise a claim of legal malpractice against Jeff Belote on

alleged violations of the Illinois or Oklahoma Rules of Professional Conduct. Finally, plaintiffs' expert, Charles Hornewer, never addressed the issue of disgorgement in either his deposition or his Rule 26(a)(2) report, and plaintiffs never sought disgorgement until five months after the close of discovery.

In a decision not reported in the Federal Supplement, the Hon. Rebecca Pallmeyer denied a legal malpractice plaintiff's motion for summary judgment premised on a violation of the Illinois Rules of Professional Conduct. Judge Pallmeyer stated: "As Defendants note, there is no private right of action for a violation of the Illinois Rules of Professional Conduct." (Citing *Owens v. McDermott, Will & Emery*, 316 Ill.App.3d 340 (1st Dist. 2000) and *Nagy v. Beckley* (above), 218 Ill.App.3d 875 (1st Dist. 1991)). Judge Pallmeyer rejected plaintiff's contention that in *Mayol v. Summers, Watson & Kimpel*, 223 Ill.App.3d 794 (4th Dist. 1982) argument existed that the Rules of Professional Conduct provided grounds for malpractice liability for the defendant attorneys. (*Alper v. Altheimer & Gray*, 2002 WL 31133287, pgs. 29-30 (N.D.Ill. 2002).

Accordingly, defendants request that this Court deny plaintiffs' motion for summary judgment for disgorgement of fees and grant summary judgment in favor of the defendants.

**WHEREFORE**, the Defendants, GOTCHER & BELOTE and JEFF BELOTE respectfully request that this Court deny plaintiff's motion for summary judgment and grant summary judgment in their favor and dismiss this case against them with prejudice.

By: /s/Daniel F. Konicek
Attorney No. 6205408
James P. Lynch
Attorney No. 6294439
KONICEK & DILLON, P.C.
21 W. State St.
Geneva, IL 60134
630.262.9655

**CERTIFICATE OF SERVICE**

Daniel F. Konicek states that the foregoing instrument was served upon the attorney(s) of record as addressed below by electronic mail on December 10, 2009.

George W. Spellmire
Jefferey O. Katz
SPELLMIRE & SOMMER
77 W. Wacker Dr., Suite 4800
Chicago, IL 60601

/s/Daniel F. Konicek